Statement of the case.

[No. 2662.]

JULIO DRESCH v. THE STATE.

1. PRACTICE—JURY LAW.—Unless the transcript in a criminal case shows affirmatively that the jury trying the case was sworn, the conviction will be set aside on appeal. See the opinion for a recital in a record *held* insufficient to show that the jury was sworn.
2. THEFT—EVIDENCE.—When the property alleged to have been stolen is shown to have been in the possession and under the care, management and control of a person other than the actual owner, at the time of the taking, the want of consent to the taking of the person in such possession must be shown, in order to support a conviction.
3. SAME—FACT CASE.—See evidence *held* insufficient to support a conviction for the theft of goats.

APPEAL from the County Court of Maverick. Tried below before the Hon. J. S. Sproull, County Judge.

The indictment charged the appellant with the theft of seven goats, of the value of one dollar per head, the property of Frank Gaines, in Maverick county, Texas, on the twenty-fifth day of September, 1881. The punishment assessed against him by a verdict of guilty was a fine of twenty-five dollars and confinement in the county jail for one day.

The substance of the testimony of Frank Gaines, the first witness for the State, was that on or about the twenty-fifth day of September, 1881, he lost seven head of goats from his herd. He found his animals in a herd of goats reputed to be the property of the mother of the defendant, and which at that time was under the charge of the defendant. These animals, which the witness lost and afterwards found in Mrs. Dresch's flock, included six "nannies" and one "billy," worth in the aggregate at least seven dollars. He recognized them by their flesh mark, and the "billy" as well by his ear mark, notwithstanding it had been changed. He demanded his property, and the defendant said that he would first speak to his mother and then deliver the goats to the witness. These and other goats of the witness were under the charge of the witness's son as herder. Witness did not give his consent to any one to take these goats, nor did he

authorize his son to consent to such taking. He recovered these goats next day under a writ of sequestration.

Cross-examined, the witness stated that the six "nannies" taken under the writ of sequestration were his. They were all white. There were a great many white goats of the size and age of these six in Mrs. Dresch's herd when these were taken, but nevertheless the witness knew that these six were his. He knew the "billy" goat was his, and he was mad because his mark had been changed. All of Mrs. Dresch's goats had been freshly marked. Witness did not see the defendant mark them. The goats were returned to the defendant subsequent to their seizure under the writ of sequestration. The writ of sequestration was issued in a suit instituted by the witness against the defendant. Witness was mad, and did not wait to hear what Mrs. Dresch had to say about his demand for the goats. The written testimony of the witness on the examining trial was read, and disclosed a conflict with his present testimony as to the time he lost his goats, and as to the total number lost.

J. W. Yates, deputy sheriff, testified that in September, 1881, he seized seven goats from the herd of the defendant under a writ of sequestration issued by Judge Terry, a justice of the peace, in a suit instituted by Frank Gaines against the defendant. These goats were pointed out to the witness by Gaines. Witness kept them a long time under the writ of sequestration, and finally returned them to the defendant under an order of court.

Miguel Leal testified, for the State, that he sold Frank Gaines a "billy" goat a long time before this trial. The goat was then in the witness's mark. Witness subsequently saw the same goat in possession of the sheriff. He was then in a different mark. The witness did not know the mark of either Gaines or Mrs. Dresch, and knew nothing of this alleged theft.

The substance of the testimony of Mrs. Gaines was that seven head of goats belonging to herself and Frank Gaines were lost about the time alleged, and were subsequently found in the defendant's herd. She identified those lost and those found, as described, as the same identical goats.

Mrs. V. Dresh was the first witness for the defense. She testified that the defendant was her son. She owned a herd of goats in September, 1881. Victoriano Aleman had cared for them on the shares for three years previously, and had returned them to her about the last of August, 1881. For two days thereafter they were in charge of the defendant as agent for the witness,

and subsequent to that time they were in charge of one Antonio as herder. In September, 1881, Mr. Dell came to the witness and told her that her goats and his had got mixed, and that, because of the similarity of marks, he found great difficulty in separating them, and he asked the witness to have the marks on her goats changed. The witness directed the defendant to change the marks, and he accordingly did so. Late in the same month Frank Gaines told the witness that he had lost some goats and believed that they were in witness's herd. He described them at the request of the witness, and the witness said to him: "Frank, you have lost some goats, and as you cannot find them, you want to make your number good out of my herd." Gaines laughed, said "yes," and went off.

On the next morning Gaines came with the sheriff to the witness's herd and took seven of her goats. These included six small nannie goats, the offspring of mother goats which belonged to the witness. These mother goats cried for the "nannies" long after they were taken, and tried to follow them. The "nannies" taken by the sheriff belonged to the witness, as did the whole herd. Frank Gaines owned no interest in the goats taken—they were wholly and absolutely the property of the witness.

F. C. Dell testified, for the defense, that he knew Mrs. Dresch's herd of goats well. They became mixed with his herd on three separate occasions which the witness mentioned, and their separation involved a great deal of trouble on account of the similarity of marks. The defendant did not know his mother's goats from those of the witness when they were mixed, and the latter had to point out to him the ones to take. Witness demanded that the defendant change the marks on his mother's goats. One day Frank Gaines's goats got mixed with the witness's herd, and they had a great deal of trouble separating them, as both herds were large. About the time that he and Gaines got their herds separated, Mrs. Dresch's herd ran into the witness's herd, and were again separated with great trouble. This was the third and last mixture. Witness got mad and sent Mrs. Dresch word that he insisted on her having the marks changed so that their respective marks could be readily distinguished. The witness knew nothing of the defendant marking any of Gaines's goats.

Edwardo Jiminez testified, for the defense, that he was present when the sheriff took the six small "nanny" goats from Dresch's

herd, and he knew that the mothers of the "nannies" were left in the herd. They cried for the young "nannies" when they were taken, and tried to follow, and were still crying for them two days later, when witness and others drove the herd across the river. Witness helped defendant mark part of his mother's goats one afternoon. He knew nothing of Gaines's "billy" goat being in Mrs. Dresch's herd at that time.

Among others the motion for new trial raised the questions discussed in the opinion.

No brief for the appellant has reached the Reporters.

*J. H. Burts,* Assistant Attorney General, for the State.

WILLSON, JUDGE. It has been repeatedly held that the record must show affirmatively that the jury which tried the case were sworn. When the record omits to show this, the conviction can not stand. (*Berry* v. *The State,* 10 Texas Ct. App., 315, and cases there cited.) In this case the record is silent upon this important point. It recites that "both parties having announced ready for trial, comes a jury of good and lawful men, to wit, Phil. Stewart and five others, who having heard the indictment read, the plea of not guilty," etc. It nowhere states that the jury were sworn, and unless they were in fact sworn, the verdict would be a nullity. (Code Crim. Proc., Art. 657.) Because of this fatal omission in the record, the judgment must be reversed and the cause remanded.

There are other errors apparent from the record which, in our opinion, would demand a reversal of the judgment. It appears from the evidence that the goats which were alleged to have been stolen by the defendant were, at the time of the taking thereof, in the possession and under the care, management and control of the alleged owner's son, and yet there is no evidence that the goats were taken without this son's consent. Such evidence we think was necessary. (*Wilson* v. *The State,* 12 Texas Ct. App., 481.)

We think, furthermore, that the evidence is insufficient to support this conviction. It fails to show with any degree of certainty a fraudulent intent in taking the goats, conceding that defendant did take them. But one of the goats, the old "billy," was certainly identified as the property of Frank Gaines, the alleged owner, except by the testimony of Frank Gaines and his

wife, who, it is true, stated that the "nanny" goats belonged to them, but failed to identify them by any particular marks. Under the circumstances of this case this evidence of ownership, to say the best of it, should be considered cautiously, and not received with implicit confidence. While, however, it may be admitted that the goats were the property of Frank Gaines, as charged, still we think there is a total want of evidence proving or even tending to prove that the defendant took them with the fraudulent intent to deprive the owner of the value thereof, and to appropriate the same to his own use. We think the evidence reasonably shows the contrary—that the goats in question got into the flock which defendant had charge of, without his knowledge or consent, and that whatever ownership he exercised over them was under the *bona fide* belief that they belonged to the flock of goats of which he at the time had charge.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Opinion delivered May 9, 1883.